## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

KATHRYN A. FERREBEE,

       Plaintiff,

       v.

KILOLO KIJAKAZI,[1] Acting
Commissioner of Social Security,

       Defendant.

CIVIL ACTION NO. 3:20-cv-02188

(SAPORITO, M.J.)

## MEMORANDUM

In this matter, the plaintiff, Kathryn A. Ferrebee, seeks judicial review of the final decision of the Commissioner of Social Security denying her claim for supplemental security income, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She has been automatically substituted in place of the original defendant, Andrew Saul. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

## I.   BACKGROUND

On October 4, 2018, Ferrebee protectively filed an application for supplemental security income, asserting a disability onset date of October 4, 2018. Her claim was initially denied by state agency reviewers on February 19, 2019. The plaintiff then requested an administrative hearing.

A hearing was subsequently held on April 11, 2019, before an administrative law judge, Jarrod Tranguch (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Dana Marmo. The plaintiff was represented by counsel at the hearing.

On March 3, 2020, the ALJ denied Ferrebee's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Ferrebee was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Ferrebee had not engaged in substantial gainful activity since her application date. At step two, the ALJ found that Ferrebee had the severe impairments of:

depression, anxiety, unspecified personality disorder, and history of polysubstance abuse.

At step three, the ALJ found that Ferrebee did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered Ferrebee's limitations in four broad functional areas as a result of her mental disorders, finding moderate limitations in all four areas: (1) her ability to understand, remember, or apply information; (2) her ability to interact with others; (3) her ability to concentrate, persist, or maintain pace; and (4) her ability to adapt or manage oneself. *See generally* 20 C.F.R. § 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments).

Between steps three and four of the sequential-evaluation process, the ALJ assessed Ferrebee's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Ferrebee

had the RFC to perform the full range of all exertional levels of work as defined in 20 C.F.R. § 416.967, with the following non-exertional limitations:

> [T]he claimant could perform jobs that would take no more than 30 days of training to learn with a Specific Vocational Preparation (SVP) level of two or less, which are generally classified as unskilled. The claimant could also perform jobs that would be considered "low stress" that would involve only occasional, simple decision-making, and only occasional changes in the work duties and work setting. The claimant could have occasional contact with coworkers, customers, and members of the general public.

(Tr. 33.)

In making these factual findings regarding Ferrebee's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. § 416.920c.

At step four, based on this RFC and on testimony by the vocational

expert, the ALJ concluded that Ferrebee was capable of performing her past relevant work as a hand packager (DOT # 920.587-018) as actually and generally performed. Based on this finding, the ALJ concluded that Ferrebee was not disabled for Social Security purposes.

Although the ALJ found Ferrebee not disabled at step four, he also recorded an alternative finding that Ferrebee was capable of performing other jobs that exist in significant numbers in the national economy, which would in turn dictate a not-disabled finding at step five. Based on Ferrebee's age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Ferrebee was capable of performing the requirements of representative occupations such as night cleaner (DOT # 323.687-014), stock worker (DOT # 209.587-034), tagger (DOT # 229.587-018), dishwasher (DOT # 318.687-010), laborer (DOT # 922.687-058), or machine feeder (DOT # 699.686-010).

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on October 6, 2020, making the ALJ's March 2020 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed her complaint in this court on November

21, 2020. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Ferrebee asserts on appeal that the ALJ's decision is not supported by substantial evidence because the ALJ's RFC determination omitted two particular non-exertional mental limitations found in uncontradicted medical opinions that the ALJ had expressly found to be "persuasive": (1) a finding by a state agency psychological consultant that Ferrebee was limited to "simple one or two step tasks"; and (2) parallel findings by a consultative examining psychologist and a state agency psychological

consultant that Ferrebee was moderately limited in her ability to "interact with supervisors" or to "accept instructions and respond appropriately to criticism from supervisors."

The plaintiff does not otherwise challenge the ALJ's findings with respect to her physical and mental RFC.

## A. Limitation to "Simple One or Two Step Tasks"

In the agency's initial administrative decision, the state agency psychological consultant, Melissa Franks, Psy.D., opined Ferrebee was limited to "complet[ing] simple one or two step tasks." (Tr. 106.) But the ALJ adopted an RFC that limited Ferrebee to "only occasional, simple decision-making." (Tr. 33.) The plaintiff contends that there is a significant distinction between "simple decision-making" and "simple one or two step tasks," and she argues that the ALJ erred in excluding this more restrictive limitation from his RFC determination for Ferrebee.[2]

We need not resolve this particular issue because, under the

_____

[2] We note that the findings of a consultative psychological examining psychologist, Gregory Coleman, Psy.D., were not so limited in this aspect of mental functioning. Dr. Coleman found Ferrebee subject to only mild limitations in her ability to understand, remember, and carry out complex instructions. He found no limitations at all in her ability to understand, remember, and carry out simple instructions. (Tr. 508.)

circumstances presented in this case, even if we assume *arguendo* that the plaintiff is correct, any error on this point is harmless.

In determining whether a claimant is capable of performing work that exists in significant numbers in the national economy, the agency and the courts routinely rely on the *Dictionary of Occupational Titles* (4th ed. 1991) ("*DOT*"), a publication by the U.S. Department of Labor that identifies thousands of jobs by name and describes the skills and other attributes required to perform each. *See* 20 C.F.R. § 416.966(d)(1) ("[W]e will take administrative notice of reliable job information available from various governmental and other publications. For example, we will take notice of . . . [the] Dictionary of Occupational Titles, published by the Department of Labor . . . ."); *see also Evans v. Metro. Life Ins. Co.*, 190 Fed. App'x 429, 436 n.7 (6th Cir. 2006) (recognizing that courts may take judicial notice of the *DOT* as well). The *DOT* includes a description of the "general educational development" ("GED") for each of the jobs catalogued therein. "General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *DOT* app. C, 1991 WL 688702. The GED scale is composed of three divisions, one of which is relevant

here—"Reasoning Development." *See id.* In occupations described as having Reasoning Development Level 1, satisfactory job performance requires that an employee be able to "[a]pply commonsense understanding to carry out *simple one- or two-step instructions*" and to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* (emphasis added). Meanwhile, occupations described as having Reasoning Development Level 2 require an employee be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.*

Courts—including this one—have found that a limitation to one- to two-step tasks is consistent with GED Reasoning Development Level 1, but *inconsistent* with GED Reasoning Development Level 2. *See Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 560 (8th Cir. 2018); *Henderson v. Colvin*, 643 Fed. App'x 273, 277 (4th Cir. 2016) (per curiam); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015); *Skeens v. Astrue*, 903 F. Supp. 2d 1200, 1210–11 (W.D. Wash. 2012); *Wisziwaty v. Astrue*, 861 F. Supp. 2d 924, 946 (N.D. Ind. 2012); *see also*

*Shingler v. Kijakazi*, Civil Action No. 4:20-CV-01344, 2022 WL 273426, at *12 (M.D. Pa. Jan. 28, 2022); *Brown v. Kijakazi*, Civil Action No. 4:20-CV-00836, 2021 WL 4711242, at *7 n.4 (M.D. Pa. Oct. 8, 2021).

Here, at step four, the ALJ found that Ferrebee was capable of performing her past relevant work as a hand packager. That job, however, is classified in the *DOT* as a Reasoning Development Level 2 position. *See* DICOT 920.587-018, 1991 WL 687916 ("packager, hand"). The ALJ, however, also recorded an alternative step-five finding that Ferrebee was capable of performing other jobs that exist in significant numbers in the national economy. Four of the six occupations identified by the ALJ were also Reasoning Development Level 2 positions, which a one- or two-step tasks limitation would preclude. *See* DICOT 209.587-034, 1991 WL 671802 ("marker" or "stock worker"); DICOT 229.587-018, 1991 WL 672150 ("ticketer" or "tagger"); DICOT 318.687-010, 1991 WL 672755 ("kitchen helper" or "dishwasher"); DICOT 922.687-058, 1991 WL 688132 ("laborer, stores"). But two of the positions identified—night cleaner and machine feeder—were Reasoning Development Level 1 positions, which are consistent with a one- or two-step tasks limitation. *See* DICOT 323.687-014, 1991 WL 672783 ("cleaner, housekeeping" or

"night cleaner"); DICOT 699.686-010, 1991 WL 678871 ("machine feeder").

Under the applicable regulations, "[w]ork exists in the national economy when there is a significant number of jobs (in *one or more occupations*) having requirements which [the claimant is] able to meet with [his or her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b) (emphasis added). Here, based on testimony by the vocational expert, the ALJ found *two* occupations with requirements that Ferrebee was able to meet with her physical and mental abilities and vocational qualifications. Moreover, based on testimony by the vocational expert, the ALJ found that a significant number of jobs existed—900,000 night cleaner jobs nationally and 66,000 machine feeder jobs nationally—meaning that *each* of these two occupations exists in significant numbers in the national economy. *See Young v. Astrue*, 519 Fed. App'x 769, 772 (3d Cir. 2013) (per curiam) ("[T]he testimony from the vocational expert that 20,000 jobs were available in the national economy is sufficient to support a finding that work exists in significant numbers."); *Bennett v. Barnhart*, 264 F. Supp. 2d 238, 259 (W.D. Pa. 2003) (finding vocational expert testimony that

- 11 -

187,500 jobs were available nationally was "satisfactory to establish the existence of a significant number of jobs in the national economy"); *cf.* *Leonard v. Heckler*, 582 F. Supp. 389, 391–92 (M.D. Pa. 1983) (finding vocational expert testimony that 5,000 jobs existed in the national economy was insufficient to establish that work exists in significant numbers).

Based on the foregoing, it is clear that, even if the plaintiff's argument is fully credited, any error with respect to the ALJ's exclusion of a more restrictive one- or two-step tasks limitation is harmless. *See* *Shingler*, 2022 WL 273426, at *12.

Our review does not end here, however, as we find the plaintiff's second claim of error is not harmless.

### B. Limitations on Interacting with Supervisors

In the agency's initial administrative decision, the state agency psychological consultant, Dr. Franks, opined that Ferrebee was moderately limited in her ability to interact with the general public, in her ability to accept instructions and respond appropriately to criticism from supervisors, and in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 105–06.)

Based on his examination of Ferrebee in person, a consultative examining psychologist, Gregory Coleman, Psy.D., reached a similar conclusion, opining that Ferrebee was moderately limited in her ability to interact with the public, with supervisors, or with co-workers. (Tr. 509.) But the ALJ adopted an RFC that limited Ferrebee to "occasional contact with coworkers, customers, and members of the general public." (Tr. 33.) This RFC determination did not include any limitation whatsoever with respect to Ferrebee's interaction with supervisors. The plaintiff argues that the ALJ erred in excluding this more restrictive limitation from his RFC determination for Ferrebee.

Although the ALJ did not explicitly reference the finding by Dr. Franks that Ferrebee was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors, he did expressly acknowledge the finding by Dr. Coleman that Ferrebee had a "moderate limitation in interacting appropriately with the public, *supervisors*, and coworkers." (Tr. 36 (emphasis added).) The ALJ found the opinions of both psychologists to be "persuasive," without any qualifiers, because these opinions were "supported by detailed explanations and the clinical signs and findings" and "consistent with the

claimant's medical treatment history." (*Id.*) Yet the ALJ's RFC determination excluded any limitation with respect to Ferrebee's ability to interact with supervisors, and it did so without any explanation whatsoever.

While an ALJ is free to reject particular limitations articulated in a medical opinion, *see generally Titterington v. Barnhart*, 174 Fed. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."); *Myers*, 373 F. Supp. 3d at 538 ("Nothing in the Social Security Act or governing regulations requires the ALJ to obtain matching "opinion" evidence in order to fashion a claimant's RFC."), it is "well-settled that when an ALJ rejects relevant limitations in a medical opinion *without explanation*, a remand is required." *Hoover v. Saul*, 485 F. Supp. 3d 538, 544 (M.D. Pa. 2020) (emphasis added); *see also Gonzales v. Colvin*, 191 F. Supp. 3d 401, 420 (M.D. Pa. 2015).

We cannot say that the ALJ's failure to adopt the more restrictive limitations posited by the two psychologists is harmless. The limitations that were adopted by the ALJ with respect to Ferrebee's ability to interact with the public and coworkers do not address this same area of

mental impairment. As our sister court recently explained in a strikingly similar case:

> The public, supervisors, and co-workers are distinct groups, and are separately addressed on the mental RFC forms. Thus, limitations on one type of interaction in the RFC does not account for limitations on the others. Notably, an inability to appropriately interact with or respond to criticism from supervisors is distinct from an inability to interact with either coworkers or the public. Indeed, the Social Security regulations treat the abilities to respond appropriately to supervision and to get along with coworkers as separate aspects of the basic mental demands of unskilled work, noting that the substantial loss of ability to meet any basic mental demand could severely limit the potential occupational base.

*Veronica B. v. Kijakazi*, Case No. 3:20-cv-6950, 2022 WL 131136, at *6 (D.N.J. Jan. 14, 2022) (citations and internal quotation marks omitted).

Here, despite the findings of Dr. Franks and Dr. Coleman with respect to a moderate limitation to Ferrebee's ability to interact with supervisors, the ALJ posed no hypothetical to the vocational expert incorporating such a limitation, and he excluded any such limitation from his ultimate RFC finding. Without any vocational evidence whatsoever on this particular question, we are unable to conclude that incorporating the limitation would not significantly erode the remaining occupational base. *See, e.g., Martinez v. Astrue*, No. CIV 09-729 JPA/LFG, 2010 WL

- 15 -

11623442, at *21 (D.N.M. Apr. 20, 2010) (noting that a vocational expert had testified that claimant who would otherwise be able to work as a housekeeper would be precluded from doing any work at all if a moderate limitation in his ability to accept instruction and to respond appropriately to criticism from supervisors was added), *report & recommendation adopted by* Case No. 1:09-cv-00729 (D.N.M. May 17, 2010) (remand order), ECF No. 23.

Accordingly, in light of the foregoing, we are unable to conclude that substantial evidence supports the ALJ's RFC determination.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Ferrebee was not disabled is not supported by substantial evidence. Accordingly, the Commissioner's decision denying her application for supplemental security income will be reversed and the case will be remanded for further proceedings consistent with this opinion.

An appropriate Order follows.

Dated: March ___28___, 2022

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge